UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| DAVID BLEEKE, MELISSA BLEEKE, K.B. (minor child), and Z.B. (minor child),<br><br>Plaintiffs,<br>v.<br><br>GREGORY SERVER, Individually and as a Member and Chairman of the Indiana Parole Board; RANDALL P. GENTRY, Individually and as a Member and Vice Chairman of the Indiana Parole Board; THOR R. MILLER, Individually and as a Member of the Indiana Parole Board; VALERIE J. PARKER, Individually and as a Member of the Indiana Parole Board; WILLIAM R. HARRIS, Individually and as a Member of the Indiana Parole Board; MIA KELSAW, Individually and as a Parole Supervisor for the Indiana Parole Board, Ft. Wayne District 2; DAMITA VANLANDINGHAM, Individually and as a Parole Supervisor for the Indiana Parole Board Fort Wayne District 2,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | NO. 1:09-CV-228 PPS APR |

**OPINION AND PRELIMINARY INJUNCTION**

In my opinion and order dated January 19, 2010, I determined that the Bleeke family -- the father, mother and two children who are the plaintiffs in this case -- are entitled to a preliminary injunction based on their procedural due process claim challenging the parole condition imposed on David Bleeke that prohibits any contact with his two children. David and his wife Melissa seek a preliminary injunction [DE 6], asking me to enjoin the enforcement of

1

these conditions or at the very least require the Defendants to give David a due process hearing to assess whether he is a risk to his children. After an evidentiary hearing, I concluded that:

> Defendants must provide further procedural protections to David before permanently imposing the conditions on his parole which prevent him from in any way associating with his children. An individualized determination as to the risks he poses to his own children must be made by an independent decision-maker before the state can impose the parole condition of preventing him from contacting his children.

[DE 33, p. 23]. Because neither party devoted very much space in their briefing or oral arguments to the specific remedy required in the event of a successful procedural due process claim, I ordered additional briefing to help me determine the proper injunctive relief. The parties' briefs have now been filed and reviewed.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause[.]" *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333. The concept is inherently flexible and is tailored to the particular time, place and circumstances of the governmental decision-making. *Id*. at 334. Three distinct factors are to be taken into account in determining the specific requirements of due process in a particular context. *Id*. at 335. These are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. My order of January 19, 2009 contains a discussion of these considerations in the present case.

As I have already determined, the private interest of David's at stake here is of considerable constitutional weight. The right to custody of one's children and to parent them without interference by the government has long been recognized by the Supreme Court as a liberty interest that is a component of substantive due process. *See, e.g., Troxel v. Granville*, 530 U.S. 57, 65 (2000) ; *Hodgson v. Minnesota*, 497 U.S. 417, 484 (1990); *Lehr v. Robertson*, 463 U.S. 248, 261 (1983); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *see also Stojanovic v. Humphreys*, 309 Fed.Appx. 48, 51 (7th Cir. Feb. 5, 2009); *Russ v. Watts*, 414 F.3d 783, 789 (7th Cir. 2005); *Doe v. Heck*, 327 F.3d 492, 522 (7th Cir. 2003)*; Brokaw v. Mercer County*, 235 F.3d 1000, 1018 (7th Cir. 2000).

Yet the right to family integrity is not absolute. *See, e.g., Brokaw*, 235 F.3d at 1019. "[T]his liberty interest in familial integrity is limited by the compelling governmental interest in the protection of children -- particularly where the children need to be protected from their own parents." *Croft v. Westmoreland County Children and Youth Services*, 103 F.3d 1123, 1125 (3rd Cir. 1997), quoted in *Brokaw*, 235 F.3d at 1019. As relevant here, the interest in familial integrity is also subject to being temporarily forfeited by an individual's lawful incarceration, as it was in David's case. Further mitigating David's interest is the fact that his placement on parole involves only a limited and conditional restoration of the full rights of a free citizen, and that the deprivation at issue is temporary, *i.e.*, lasting only for the duration of his term of parole. *Morrissey v. Brewer*, 408 U.S. 471, 478 (1972).

As for the second factor, the risk of erroneous deprivation is high where a mandatory parole condition interfering with the right is imposed without regard to the specific history or characteristics of a particular parolee. As I observed in the January 19, 2010 order: "an individualized determination of dangerousness would allow for weeding out individuals who truly pose a risk to their own children from those who do not" and "would also allow for appropriate narrowing of David's parole conditions so that they are not so invasive towards his right to familial integrity." [DE 33, p.20].

I recognize, with respect to the third *Mathews* factor, that the State of Indiana has significant interests in this dispute, including the reintegration of parolees into society, the protection of children from abuse, and conservation of the public fisc. These interests do not all weigh in the same direction in this case, and none of these interests is taken lightly. The Seventh Circuit has noted that "the state's interest is substantial: the protection of the public – including the parolee's family and community – from antisocial acts of a parolee, as well as the parolee's reassimilation and rehabilitation." *Felce v. Fiedler*, 974 F.2d 1484, 1500 (7th Cir. 1992). I have earlier mentioned the compelling governmental interest in the protection of children, particularly from abuse at the hands of their parents. *Brokaw*, 235 F.3d at 1019; *Croft*, 103 F.3d at 1125.

I am also aware that the State of Indiana has already spoken on the manner in which conditions are to be imposed on a parolee. The Indiana statute dealing with parole conditions for sex offenders contemplates the exercise of some discretion in the imposition of conditions such as those at issue here. Indiana Code §11-13-3-4(g)(1) provides that the parole board "**may** require" a parolee to avoid contact with minors, and generally provides that discretionary conditions "must be reasonably related to the parolee's successful reintegration into the

4

community and not unduly restrictive of a fundamental right." IC §11-13-3-4(b) [emphasis added].

In *Coleman v. Dretke*, 395 F.3d 216 (5th Cir. 2004), the Fifth Circuit considered a habeas corpus petitioner's procedural due process challenge to parole conditions requiring sex offender registration and therapy when he was convicted only of misdemeanor assault, not a sex crime. Citing the Seventh Circuit's decision in *Felce* among others, the Fifth Circuit concluded that the State of Texas "may condition Coleman's parole on sex offender registration and therapy only if he is determined to constitute a threat to society by reason of his lack of sexual control," and that absent a conviction of a sex offense, the state "must afford him an appropriate hearing and find that he possesses this offensive characteristic before imposing such conditions." *Id*. at 225. Similarly here, after consideration of the three *Mathews* factors, I find that conditions totally limiting David's contact with his own children may only be imposed after an appropriate hearing and a finding that David constitutes a threat to his children by reason of his lack of sexual control.

As for the process that David is entitled to, I have considered a number of cases, particularly the Supreme Court's decisions in *Morrissey v. Brewer,* 408 U.S. 471 (1972), *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), and *Wolff v. McDonnell*, 418 U.S. 539 (1974). In this context – where an offender is found guilty of a sex offense but not one against children – I find the following procedures are minimally required to meet the requirements of due process.

First, the decision as to the imposition of conditions limiting David's contact with his own children must be made by an independent decisionmaker, that is, by someone not directly involved in his supervision on parole. In *Felce v. Fiedler*, 974 F.2d 1484 (7th Cir. 1992), the

5

Seventh Circuit considered the implications of due process for a parole condition requiring the parolee to take antipsychotic drugs. In undertaking the analysis, the court noted "as a threshold matter, that we perceive little reason to distinguish the parole situation from the prison situation" and "[i]n terms of the *Mathews* factors, the relationship of the parties – both in terms of their responsibilities and prerogatives – remains essentially unaltered." *Id*. at 1496. The Seventh Circuit nonetheless found that the determination to impose the adverse condition – made by the parolee's individual parole agent after consultation with an examining psychiatrist – was not rendered by a sufficiently neutral and independent authority: "we conclude that the defendants' current procedure – with its heavy emphasis upon the judgment of the individual parole agent – is constitutionally inadequate." *Id*. at 1498, 1500.[1] Similarly here, a determination by David's own parole officer, even if made by an exercise of discretion rather than as a matter of course, would not be constitutionally sufficient. Because "a decisionmaker need not be external to an institution to be independent," I find that due process would be satisfied if the parole board selects a person or panel of persons not personally involved in David's supervision to consider whether conditions limiting or banning contact with his children should be imposed. *Morrissey v. Brewer*, 408 U.S. at 485.

I reject the Bleekes' suggestion that the determination be made by a judicial officer after a hearing in which full trial procedures, including rights to take discovery, are employed.

As the Supreme Court found in *Morrissey*, the "independent officer need not be a judicial officer." *Id*. at 486. "[D]ifferences in the origin and function of administrative agencies

---

[1] Other than the issue of the independent decisionmaker, *Felce* did not address the particular procedural due process requirements for imposition of parole conditions impacting constitutionally protected interests.

6

'preclude wholesale transplantation of the rules of procedure, trial and review which have evolved from the history and experience of the courts.'" *Mathews*, 424 U.S. at 348, quoting *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134,143 (1940). "The judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances. The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Mathews*, 424 U.S. at 348, quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-172 (1951) (Frankfurter, J., concurring). The context here is the determination of appropriate parole conditions for David, a matter generally and properly within the authority, expertise and jurisdiction of the parole board.

Due process does require reasonable notice and the opportunity to be heard. Within a reasonable time, the parole board must give David advance written notice of a hearing on the imposition of conditions limiting his contact with his children. The notice should be given sufficiently in advance of the hearing to permit David to marshal the facts and prepare a defense. David must be permitted to appear in person and to be heard at the hearing. Within reasonable limits as to the length and scope of the hearing, David must be permitted to call witnesses and present documentary evidence in opposition to the imposition of such conditions. As in *Morrissey*, I find that due process requires "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Id.*, 408 U.S. at 489. Meeting the due process requirements set forth above should be familiar and well within the regular practice of the Indiana Parole Board, as they

mirror the statutory requirements for both preliminary and final parole revocation hearings pursuant to Indiana statutes. *See* IC §11-13-3-9(a); §11-13-3-10(a)(2).

Due process also requires that, following the hearing, the decisionmaker must issue a written statement as to the evidence relied upon and the reasons for the determination whether or not David poses a risk to his children sufficient to ban or limit his contact with them for the duration of his parole. *See*, *e.g.*, *Morrissey*, 408 U.S. at 489. In the context of determinations as to temporary protective custody of children, the Seventh Circuit has found that a "reasonable cause" standard satisfies the due process clause. *Dupuy v. Samuels*, 465 F.3d 757, 760 (7th Cir. 2006), quoting *Lossman v. Pekarske*, 707 F.2d 288, 291 (7th Cir. 1983). I conclude that such a standard is minimally required here.

In determining what due process requires as to representation by counsel, I have reviewed the Supreme Court's rulings on that issue with respect to parole and probation revocation proceedings. The Supreme Court has concluded that there is no due process distinction between revocation of parole and revocation of probation because neither is "a stage of a criminal prosecution," and that, although either may result in loss of liberty, there does not exist a Sixth Amendment right to counsel for all parole or probation revocation proceedings. *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 787 (1973).

The Supreme Court reviewed at length why counsel would generally be a negative for those proceedings, and some of those observations are instructive in the context of the parole condition hearing at issue here:

> The introduction of counsel into a revocation proceeding will alter significantly the nature of the proceeding. If counsel is provided for the probationer or parolee, the State in turn will normally provide its own counsel; lawyers, by training and disposition, are advocates and bound by professional duty to present all available

8

> evidence and arguments in support of their clients' positions and to contest with vigor all adverse evidence and views. The role of the hearing body itself, aptly described in *Morrisey*, as being 'predictive and discretionary' as well as factfinding, may become more akin to that of a judge at a trial, and less attuned to the rehabilitative needs of the individual probationer or parolee.

*Id*. at 787-788. *Gagnon* determined that counsel may be required by due process in some revocation cases, but that "[i]t is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements." *Id*. at 790. The next year in *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974), the Supreme Court found no right to counsel for prisoners facing loss of good-time or imposition of solitary confinement, quoting at length from *Scarpelli*.

In Indiana, there is a <u>statutory</u> (not constitutional) right to representation by counsel for <u>probation</u> revocation hearings, which are court proceedings. IC §35-38-2-3(e). Parole revocation, by contrast, is heard and determined by the parole board, not a court. The Indiana statutes governing those hearings do not provide for a right to counsel. *See* IC §11-13-3-3(i); §11-13-3-9(a); §11-13-3-10(a)(2). Because my role at present is limited to a determination of what due process minimally requires for the situation at hand, and in view of these precedents, I cannot conclude that there exists a constitutional right to representation by counsel at the due process hearing this order requires. The procedures of the Indiana Parole Board will govern the extent to which counsel may be present and participate in the hearing on David's behalf; the legal posture of this case does not now authorize the court to reach beyond determining the requirements of due process to address such procedural matters.

I have considered whether the conditions now in place must be suspended pending the hearing and resulting determination. "When protected interests are implicated, the right to some kind of prior hearing is paramount." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-570 (1972). Nonetheless, there exist "extraordinary situations" in which "some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Id.* at 570, n.7, quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971). Here, where the parent-parolee has been separated from his children during his incarceration, the continuation of that separation pending a determination whether it should be continued during his parole constitutes such an "extraordinary situation" because the safety of the children is a consideration. Acknowledging that "[a]mong the liberties protected by [the due process] clause is the right of parents to the custody of their children," the Seventh Circuit has nonetheless recognized that "'when a child's safety is threatened, that is justification enough for action first and hearing afterward.'" *Dupuy v. Samuels*, 465 F.3d 757, 760 (7th Cir. 2006), quoting *Lossman v. Pekarske*, 707 F.2d 288, 291 (7th Cir. 1983). The preliminary injunction will therefore provide that the current conditions restricting David's contact with his children remain in effect for a period of sixty days, in which time the State must provide a hearing on the issue that meets the due process minima set forth in this order.

In crafting and here announcing the preliminary injunctive relief I am persuaded to give, I remain mindful of the limitations I expressed in my January 19 opinion:

> To be clear, the awarding of relief in this case is done with the knowledge that "[t]he procedural protections required by the Due Process Clause must be determined with reference to the rights and interests at stake in the particular case." [*Washington v.*] *Harper*, 494 U.S. [210, 229 (1990)]. By no means should this opinion be read to support the notion that every single parole condition must be screened through a full due process hearing. Under the facts presented by this

10

case, a parolee's fundamental interest in being with his children was blocked by the defendants' mandatory parole conditions. A case with less significant a liberty interest, or parole conditions that did not so comprehensively seek to impede it, would not justify court interference under the Constitution.

[DE 33, pp.23-24].

## CONCLUSION

**The Indiana Parole Board, represented here by its members named as defendants in this case, is PRELIMINARILY ENJOINED as follows.**

The current conditions restricting David Bleeke's contact with his children may remain in effect for a period of sixty days, in which time the Parole Board must provide a hearing on the issue that meets the due process minima set forth in this order.

Within a reasonable time, the Parole Board must give Mr. Bleeke advance written notice of the time and place of a hearing on the imposition of conditions limiting his contact with his children. The notice should be given sufficiently in advance of the hearing to permit Mr. Bleeke to marshal the facts and prepare a defense.

A person or panel of persons not personally involved in Mr. Bleeke's supervision must preside at the hearing and render a decision on the imposition of conditions restricting Mr. Bleeke's contact with his children.

Mr. Bleeke must be permitted to appear in person and to be heard at the hearing.

Within reasonable limits as to the length and scope of the hearing, Mr. Bleeke must be permitted to call witnesses and present documentary evidence in opposition to the imposition of the disputed conditions.

Mr. Bleeke must be afforded the right to confront and cross-examine adverse witnesses, unless the hearing officer specifically finds good cause for not allowing confrontation.

I conclude that Mr. Bleeke does not have a constitutional right to counsel's formal representation at the hearing, but the procedures of the Indiana Parole Board will govern the extent to which counsel may be present and participate in the hearing on Mr. Bleeke's behalf.

Following the hearing, the decisionmaker must issue a written statement as to the evidence relied upon and the reasons for the determination whether or not there exists reasonable cause to believe that Mr. Bleeke poses a risk to his children sufficient to ban or limit his contact with them for the duration of his parole.

**SO ORDERED.**

ENTERED:   March  19 , 2010.

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT